Allen, J.
 

 Throughout this opinion the plaintiff in error will be called the surety and the defendants-in error the materialmen. The surety contends in the present action, as in the case of
 
 Southern Surety Co.
 
 v.
 
 Chambers, ante,
 
 434, 154 N. E., 786, recently decided, that the provisions of Sections-2365-1 to 2365-4, inclusive, General Code, (107 Ohio Laws, 642), cannot be construed with this bond so as to raise an obligation against the surety on behalf of the materialmen, pointing out that the sole obligation of the surety under the express provisions of the bond is to indemnify the obligee, the school board of Alger,' Ohio, against any loss or damage directly arising from the failure of
 
 *528
 
 the principal to faithfully perform the contract. The surety particularly urges that the bond in question does not comply with the statute, and hence is not governed by the statutory provisions contained in Sections 2365-1 to 2365-4, inclusive. The material portions of the sections in question read as follows:
 

 “Sec. 2365-1. That when public buildings or other public works or improvements are about to be constructed, erected, altered, or repaired under contract, at the expense of the state, or any county, city, village, township or school district thereof, it shall be the duty of the board, officer or agent, contracting on behalf of the state, county, city, village, township, or school district, to require the usual bond as provided for in statute with good and sufficient sureties, with an additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials furnished in the construction, erection, alteration or repair of such building, works or improvements.
 

 “Sec. 2365-2. Such bond shall be executed by such contractor with such sureties as shall be approved by the board, officer, or agent acting on behalf of the state, county, city, village, township or school district aforesaid, in an amount equal to at least fifty per cent. (50%) of the contract price, and conditioned for the payment by the contractor and by all subcontractors, of all indebtedness which may accrue to any person, firm or corporation, on account of any labor performed or materials furnished in the construction, erection,
 
 *529
 
 alteration or repair of such building, works or improvement. Such bond shall be deposited with, and held by, such board, officer or agent for the use of any party interested therein.
 

 “Sec. 2365-3. Any person, firm or corporation to whom any money shall be due on account of having performed any labor, or furnished any material in the construction, erection, alteration or repair of any such building, work or improvement, within ninety (90) days after the acceptance thereof of the duly authorized board or officer, shall furnish the sureties on said bond a statement of the amount due to any such person, firm or corporation. No suit shall be brought against said sureties on said bond until the expiration of sixty (60) days after the furnishing of said statement. If said indebtedness shall not be paid in full at the expiration of said sixty days, said person, firm or corporation may bring an action in his own name upon such bond, as provided in Sections 11242 and 11243 of the General Code of the state of Ohio, said action to be commenced within one year from the date of the acceptance of said building, work or improvement.
 

 “Sec. 2365-4. The bond hereinbefore provided for shall be substantially the following form, and recovery of any claimant thereunder shall be subject to the conditions and provisions of this act to the same extent as if such conditions and provisions were fully incorporated in said bond form:
 

 “Know all men by these presents, that we, the undersigned--as principal and - as sureties, are hereby held and firmly bound unto-in
 
 *530
 
 the penal sum of--dollars, for the payment of which well and truly to be made, we hereby jointly and severally bind ourselves, our heirs, executors, administrators, successors and assigns.
 

 “Signed this-day of --, 19-.
 

 “The condition of the above obligation is such, that whereas the above named principal did on the -day of-, 19-, enter into a contract with -, which said contract is made a part of this bond the same as though set forth herein;
 

 “Now, if the said - shall well and faithfully do and perform the things agreed by -• to be done and performed according to the terms of said contract; and shall pay all lawful claims of subcontractors, materialmen and laborers, for labor performed and materials furnished in the carrying forward, performing or completing of said contract; we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim, as well as for the obligee herein; then this obligation shall be void-; otherwise the same shall remain in full force and effect; it being expressly understood and agreed that the liability of the surety, for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated.
 

 “The said surety hereby stipulates and agrees that no modifications, omissions, or additions, in or to the terms of the said contract or in or to the plans or specifications therefor shall in any wise affect the obligations of said surety on its bond.”
 

 Is the bond controlled by the statutes above quoted?
 

 
 *531
 
 It is true that from the standpoint of strict statutory compliance this bond is not unassailable. It does not in its own express conditions include the provisions required by the statute, for it did not set forth either verbatim or in substance an agreement to pay all claims for labor performed and materials furnished.
 

 However, the bond in question was the only bond given in connection with the construction of the school building. It was in exactly the prescribed statutory amount, it specifically referred to the contract, and was the bond executed and delivered by the surety after it had expressly bound itself to furnish a bond for recovery by materialmen and subcontractors which should conform to the statute.
 

 The bond was given after the surety company had delivered to the school board, on behalf of the contractor, a bid bond in the sum of $7,000, the condition of which was as follows:
 

 “If said proposal be accepted and said principal shall within ten days after receiving written notice thereof enter into proper contract with said board of education for the erection and completion of said public school building at Alger, Ohio; and shall furnish bond in the sum of fifty per cent, of the contract price guaranteeing the faithful performance of all provisions of the contract and the payment of all claims for labor and material used in the execution of the work, then this obligation shall be void, otherwise remain in full force and virtue in law.”
 

 That is to say, the surety, prior to executing the bond upon which suit was brought, expressly agreed
 
 *532
 
 that this bond should comply with the statute as to the protection of materialmen and laborers. This fact emphasizes the failure of the surety to comply with the provisions of the statute in the final bond, for not only was the surety chargeable with notice of the statute, but it had specifically executed an obligation agreeing to comply with the statute in regard to the term required as to recovery for labor and materials.
 

 Under these circumstances, the bid bond was a part of the contract. It was evidence of the obligation assumed not merely by the principal contractor, but by the surety, and is to be construed with the bond finally given, which lacked the term required. The final bond, although it omitted the term for the protection of materialmen and subcontractors, obligated the surety to secure faithful performance of the contract. The contract was made with notice of the statute, and included the bid bond, which expressly guaranteed the payment of claims for labor and material. Hence the surety expressly bound itself to pay for labor and material, as much so as though stated in the bond itself. In this respect the case is similar to the case of
 
 Builders’ Lumber & Supply Co.
 
 v.
 
 Chicago
 
 Bonding
 
 & Surety Co.,
 
 167 Wis., 167, 166 N. W., 320, which held in the fourth paragraph of the syllabus that:
 

 “Where the bond of a contractor for municipal work is conditioned that he shall ‘fully and faithfully perform all the conditions and covenants contained in the contract,’ and in the contract he covenants to ‘pay in full for all labor employed
 
 *533
 
 and materials used,’ the two instruments must be construed together and the surety is thereby as ‘expressly’ bound to pay for labor and materials as if this were stated in the bond itself.”
 

 The provisions of the bid bond, the amount of the final bond, and its reference to the contract all show that the final bond was given in pursuance of the statute, being required by the school board because of the statutory provision. While not, therefore, a bond which conforms to statute, the bond sued upon was a bond to which the statute had reference and concerning which it made provision.
 

 Section 2365-4 provides that recovery of any claimant under the bond provided for by the statute shall be subject to the conditions and provisions of the statute to the same extent as if such conditions and provisions were fully incorporated into the bond form. This sentence indicates that the Legislature realized that bonds might be written to secure performance of contracts for the erection of public structures which did not expressly comply with the statute. The Legislature specifically required that the provisions of the statute be read into such bonds. If we were to hold that bonds which fail to comply with the statute are not governed by the statute because of their noncompliance with the statute, this first sentence of Section 2365-4 would be meaningless. From a still broader standpoint, it may be observed that it would be a strange doctrine which should hold that a compensated surety can fail to comply
 
 *534
 
 with the provisions of the statute and then successfully urge that the statute does not apply to the bond the surety has given, when the fact that it is not a statutory bond is due to the surety’s own failure to carry out the statutory requirements. This bond was given in pursuance of the statute and is governed thereby.
 

 That the provisions of Sections 2365-1 to 2365-4 are to be read into bonds given in pursuance of statute has just been held by this court in the case of
 
 Southern Surety Co.
 
 v.
 
 Chambers, ante,
 
 434, 154 N. E., 786, which decided that under Section 2365-1
 
 et seq.,
 
 General Code, a bond given by a compensated surety in connection with a contract for the erection of a public building, which agrees to indemnify a board of education of a municipality for loss occasioned in the erection of the school building in question, but fails to comply with the provisions of Section 2365-1
 
 et seq.,
 
 to the effect that such bond shall contain an additional obligation for the payment by the contractor and all subcontractors for all labor performed or materials furnished in the construction, erection, alteration, or repair of such building, works, or improvements, is available for recovery by materialmen and subcontractors for all labor performed or materials furnished in the construction, erection, alteration, or repair of such buildings, works, or improvements, regardless of the terms and conditions written into the bond by the contracting parties.
 

 It is further strongly contended by the surety that if the materialmen had been diligent they
 
 *535
 
 could have discovered what kind of a bond had been given and whether the bond in question protected them. In this connection the surety calls attention to the fact that the statute, Section 2365-2, provides for the deposit of the bond with the public board for the use of any party interested therein, in order that the bond may be made a matter of public record, and urges that this provision shows that the materialman is bound at his peril to ascertain the nature of the bond which has been given. However, the materialman has a right to assume that the parties to a contract for the erection of a public building make their agreement with the provisions of the Code in mind. If they comply with the Code, he is protected, and hence he is not bound at his peril to ascertain the terms of the bond. Various cases are cited counter to this holding. They all arise under statutes entirely different from our own, in which, as detailed at length in the decision in the
 
 Southern Surety Company case, supra,
 
 the Ohio Legislature expressly provided that the parties to a contract of this kind are presumed to contract with the statute in mind, for it deliberately enacted a provision writing the statute into every bond given in pursuance thereof.
 

 It is also contended that the obligation of the surety cannot be extended beyond its contract, and that a third party cannot sue upon this bond unless the contract was made expressly for the benefit of the third person concerned. These contentions are answered by the holding already
 
 *536
 
 made in the case of
 
 Southern Surety Co.
 
 v.
 
 Chambers,
 
 that the contract of the surety includes the provisions of the statute, and that these provisions write into the contract a clause extending its benefit to materialmen and subcontractors.
 

 After all, this is not a contract between private parties. The Legislature enacted the statutes here considered because of the public need for surety contracts giving security for laborers and material-men who furnish labor and material for the erection of public buildings and are not protected by being able to secure a lien, as upon private structures. That is, this bond is given partly in order to protect the public. As was said by the Supreme Court of the United States in
 
 Equitable Surety Co.
 
 v.
 
 McMillan,
 
 234 U. S., 448, at page 457, 34 S. Ct., 803, 806 (58 L. Ed., 1394), a case where the bond construed had been given for the protection not only of laborers and materialmen but also of the government:
 

 “The surety is charged with notice that he is entering into what is in a very proper sense a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee, and therefore incapable, upon general principles of equity, of bartering away, for its own benefit or convenience, the rights of the beneficiaries.”
 

 There is no real inconsistency in the rulings which make a distinction between private and compensated sureties. The obligation of the surety
 
 *537
 
 must in each case be measured by its contract; but in tbe case of tbe compensated surety tbe construction of the contract is necessarily affected by tbe fact that tbe surety draws its own contract, often in terms technically complex. Tbe familiar rule will therefore be exerted against a compensated surety that tbe contract will be applied most strongly against the party who draws it. For that reason, as well as because of tbe public character of tbe obligation, under tbe recent statutes dealing with contracts of this kind, tbe rule of
 
 strictissimi juris
 
 does not apply in its full rigor.
 

 Tbe statute under construction is a remedial statute, and hence that construction of its provisions consistent with and most favorable to tbe fulfillment of tbe purpose of tbe statute should be adopted. As is said in 2 Sutherland on Statutory Construction (2d Ed. Lewis), Section 585:
 

 “Tbe courts construe remedial statutes most liberally to suppress tbe mischief and advance tbe remedy. * * * The courts follow tbe reason and spirit of such statutes till they overtake and destroy tbe mischief which tbe Legislature intended to suppress. In doing so they often go quite beyond tbe letter of tbe statute. What is within tbe intention is within tbe statute though not within tbe letter; and what is within tbe letter but not within tbe intention is not within tbe statute.”
 

 It is also urged that tbe record shows that none of tbe claimants furnished tbe surety with a statement of tbe amount claimed to be due, within tbe time required under tbe statute, although it is con
 
 *538
 
 ceded that the building has been finished more than 90 days. Section 2365-3, G-eneral Code, provides that a statement shall be furnished within 90 days after acceptance of the building, and that no suit shall be brought until the expiration of 60 days after the furnishing of the statement.
 

 It is conceded that numerous statements of this obligation were furnished the surety with due promptness. The record also shows that the building was not accepted prior to the bringing of this suit. Under such circumstances, obviously the statements could not be furnished within 90 days after the acceptance of the building, and the statutory provision does not apply. This objection is therefore overruled. The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Day, Kinkade and Robinson, JJ., concur.