Marshall, C. J.
 

 Primarily this error proceeding involves a construction of Sections 2365-1 and 2365-3, General Code. Section 2365-1 authorizes the state, or any political subdivision of the state, when constructing public improvements, to require
 
 *33
 
 the contractor to give a bond for the performance thereof, with an additional obligation for the payment by the contractor and by all subcontractors for all labor performed or materials furnished in the construction of such improvements. The bond in this case was given under that section and is 'sufficiently comprehensive to create a liability on the part of the surety for labor and materials furnished by the subcontractor, Schmidt.
 

 The validity and efficacy of this statute has been more than once declared by this court. The latest pronouncement on this subject is
 
 American Guaranty Co.
 
 v.
 
 Cliff Wood Coal & Supply Co.,
 
 115 Ohio St., 524, 155 N. E., 127, recently decided by this court. The real difficulty arises out of the proper interpretation of Section 2365-3 (107 Ohio Laws, p. 642), which reads, in part:
 

 “Any person, firm or corporation to whom any money shall be due on account of having performed any labor, or furnished any material in the construction, erection, alteration or repair of any such building, work or improvement, within ninety (90) days after the acceptance thereof by the duly authorized board or officer, shall furnish the sureties on said bond a statement of the amount due to any such person, firm or corporation. No suit shall be brought against said sureties on said bond until the expiration of sixty (60) days after the furnishing of said statement.”
 

 The first matter to be discussed is that of the statement given by Schmidt on January 2, 1924. It is insisted that that letter did not meet the requirements of the statute, because it was not a statement. It is insisted that it was nothing more
 
 *34
 
 than a notice and that it lacked some of the essential elements of a statement. In
 
 C., R. I. & P. Ry. Co.
 
 v.
 
 People.,
 
 217 Ill., 164, 75 N. E., 368, it was held:
 

 “A ‘statement’ is defined to be ‘a formal, exact, detailed presentation.’ Standard Diet., Tit. ‘Statement.’ A statement would contain all that would appear in a schedule or list, but would contain minutiae and matter of description not necessary to a schedule or inventory.”
 

 It must be conceded that inasmuch as the Legislature employed the word “statement” and did not employ the word “notice” something more than a mere notice is necessary.
 

 We are further of the opinion that the letter of January 2, 1924, did contain something more than a mere notice of having a claim. The letter recites the contract, the bond, and the amount thereof, with sufficient particularity to be fully identified. It further states that the surety company guaranteed the payment of all lawful claims of all subcontractors, materialmen, and laborers. It recites the making of a contract between the principal contractor and the subcontractor, although it does not state what particular part of the work was covered thereby. The statute does not require the statement to be made with all the particularity of a statement of account. It is only required that it be a statement of the amount due. It is true that it does not accurately state the amount due, but it places the amount at a figure which was very much in excess of the amount recovered. It was more than a notice, because it advised the surety company that it was for material and labor under a
 
 *35
 
 subcontract, and that it was for a certain part of the work contemplated in the bond. To hold that this statement wholly failed to meet the requirements of the statute, and to defeat the suit of Schmidt on that ground, would be a resort to a technicality which would not tend to increase the respect of the people or the bar for the decisions of courts of last resort. Holding as we do that the statement is sufficient in form, it yet remains to be determined whether the statement was prematurely furnished, and therefore whether the suit, which was brought after the expiration of 60 days from the furnishing of that statement, was likewise prematurely brought. It is urged by the surety company that, even though the statement is sufficient in form and substance, it could not under the statute be furnished until after the acceptance of the improvement, and within 90 days after such acceptance. It is insisted by counsel for Schmidt, first, that the improvement had been accepted; and, second, that, even if it had not been accepted, under the fair interpretation of the statute the statement might be furnished at any time after the amount became due,
 
 not later
 
 than 90 days after acceptance.
 

 We shall first determine whether or not there was an acceptance of the improvement, prior to January 2, 1924. The statute does not define “acceptance” or in any way indicate what amounts to an acceptance, except that it is provided that the acceptance must be made “by the duly authorized board or officer.” Though counsel for Schmidt insisted that the statement could be furnished at any time not later than 90 days after acceptance, it was
 
 *36
 
 nevertheless sought to show that there had been an acceptance in compliance with the statute. One of the questions necessary to be determined is whether the proof shows any acceptance prior to January 2, 1924, which meets the requirements of the statute.
 

 An interrogatory was propounded to the jury upon this point, as follows:
 

 “State the date on which said road was accepted by the department of highways and public works of Ohio.” To which the jury answered: “On or about December 15, 1923.”
 

 A second interrogatory was propounded, as follows: “State the name of the officer of the department of highways and public works by whom said road was accepted. ’ ’ To which the jury answered: “W. C. Faucett.”
 

 The record discloses that W. 0. Faucett was the resident deputy state highway commissioner, and, further, that he was division engineer for that section of the state. It is contended that the record does not support that finding or even furnish any evidence tending to prove the correctness of that answer. From the record on that point we quote all the evidence. L. E. House, an engineer in the employment of Schmidt, and in charge of this subcontract, testified that the surface of the road was completed November 29, 1923, and that about two weeks thereafter it was opened for traffic. The following questions were then asked and answered:
 

 “Q. Were you living down there at that time when it was opened? A. Yes.
 

 “Q. Did you see any of the state engineers?
 
 *37
 
 A. I saw the state maintenance man the morning it was opened.
 

 “Q. "Who was that? A. Mr. -, Caldwell, Ohio.
 

 “Q. Was the road stopped prior to that? A. It was.
 

 “Q. Did the state maintenance man open it? A. I couldn’t tell you.
 

 “Q. Was he there the day it was opened? A. Yes, sir.
 

 “Q- Was Faucett there? A. I didn’t see him.
 

 “Q. Do you know Faucett? A. Yes.
 

 “Q. He is what? A. Division engineer for that section of the state.
 

 “Q. In a few weeks after it was completed the road was opened, you say, for traffic? A. Yes.
 

 “Q. Has it remained open since continually to the public? A. Yes.”
 

 Nowhere in the record is it shown that Faucett was a duly authorized officer to accept the improvement, or that he in fact accepted it, or that he even ordered the opening of the road to public travel. The answer of the jury that the road was accepted by the department of highways and public works on or about December 15, 1923, was at most the jury’s legal conclusion, and is not a finding of fact which becomes conclusive upon this court or which precludes this court from looking to the evidence to determine what was done by any duly authorized board or officer of the state in the matter of acceptance. The further answer of the jury that the road was accepted by W. C. Faucett likewise lacks conclusiveness. If there were any evidence tending to support this answer of the jury,
 
 *38
 
 this court would not under the prevailing rule weigh the evidence to determine the correctness of the jury’s finding.
 

 It is not claimed that there was any record determination, or that any board or officer of the state made or filed any report showing an official acceptance, and it is clear by the record, and by the admissions of counsel, that acceptance, if any, is shown only by the fact that the road was open to public travel on a certain date, and that the surface of the roadway had been completed at that time, and that such public use of the road was sufficiently notorious that the state officials in charge of the improvement must have known that fact. The legal question before this court, therefore, resolves itself into the simple inquiry whether notorious use of the road for public travel after the surface of the roadway had been completed, without any official determination by any authorized board or officer, and long prior to the final completion and official acceptance and payment of final estimates, is such acceptance as meets the requirements of the statute.
 

 It must be borne in mind in this connection that the statute uses the word “acceptance.” It does not refer to partial acceptance, or acceptance of a part of the work; it does not define the word “acceptance;” there is nothing in the statute to indicate that use and occupancy of the improvement constitute an acceptance. There is nothing to indicate that substantial acceptance, or something tantamount to acceptance, would be sufficient. The contract in this case was a lump-sum contract and an entire contract. The liability of the contractor,
 
 *39
 
 and therefore the liability of the surety upon the bond of the contractor, did not cease until complete performance. The contract between the state and the principal contractor contains a paragraph under the subtitle, “Acceptance and Final Payment,” the effect of which is that the improvement shall be inspected, by the director before final estimate is allowed, and that when he finds the work is completed, according to the plans and specifications, he shall issue a certificate of the amount of work done and thereupon the contractor shall receive the balance due on the contract. It is further provided in the subject of “Partial Payments” that no partial payment can be construed as an acceptance by the director of any part of the work. These provisions in the contract are not at all conclusive of the matter, but perhaps throw a little light upon the subject.
 

 Numerous authorities have been cited, only one or two of which need be discussed. There is a federal statute (Section 6285, Barnes’ Fed. Code; Section 6923, U. S. Comp. Stats.) relating to construction of public buildings for the federal government, which provides, among other things:
 

 “If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, * * * they shall
 
 *40
 
 have a right of action, and shall be, and are herebyj authorized to bring suit * * * against said contractor and his sureties.”
 

 This statute was construed in the case of
 
 Illinois Surety Co.
 
 v.
 
 United States,
 
 240 U. S., 214, 36 S. Ct., 321, 60 L. Ed., 609. It will be seen that that statute used the word “settlement” instead of “acceptance.” There is, of course, a vast difference between the two terms, which need not be dwelt upon. It is significant, however, that Mr. Justice Hughes, at page 221 (36 S. Ct., 324), discussed the meaning of the word “settlement,” and what amounted to an official settlement, as follows:
 

 “We think that the words ‘final settlement’ in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months’ period runs. The time of the final administrative determination of the amount due is a definite time fixed by a public record and readily ascertained. .As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account.”
 

 This reasoning has application to the instant case. Applying the same, the conclusion is irresistible that the “acceptance” under the Ohio statute must be an administrative determination of the actual completion of the work in accordance with the terms of the contract and in compliance with the plans and specifications, and that this must be
 
 *41
 
 fixed by public record and readily ascertained. The Ohio statute is much more definite and specific upon the point of requiring an official administrative determination than the federal statute, because the Ohio statute contains the requirement that the acceptance must be by “the duly authorized board or officer.”
 

 Another important federal authority is that of
 
 U. S., ex rel. Texas Portland Cement Co.,
 
 v.
 
 McCord,
 
 233 U. S., 157, 34 S. Ct., 550, 58 L. Ed., 893, as follows:
 

 “An action upon the bond of a public contractor by persons supplying him with labor and materials is prematurely brought if begun within six months from the completion and final settlement of the contract, although it appears that after such performance and settlement the United States neither had nor asserted any claim, demand, or cause of action against the contractor or his sureties, since such right of action created by the Act of February 24, 1905, * * * is specifically conditioned upon the fact that no suit shall be brought by the United States within such six months’ period.”
 

 The foregoing pronouncement relates to the same federal statute, and has direct applicability to the case at the bar, and is not in any wise weakened by reason of the federal statute referring to settlement rather than to acceptance.
 

 It is urged by counsel for Schmidt that the statute should be construed as giving the right to furnish the statement at any time, provided such time is not later than 90 days after acceptance of the improvement. The reason for requiring a notice to be given after the acceptance of the improve
 
 *42
 
 ment is not far to seek. The primary purpose of requiring a bond guaranteeing performance is to protect the state or the political subdivision of the state contracting for the improvement. As stated by Kinkade, J., in
 
 Cleveland Builders Supply & Brick Co.
 
 v.
 
 Village of Garfield Heights,
 
 116 Ohio St., 338, 156 N. E., 209, decided by this court April 5, 1927, the idemnifying bond pursuant to Sections 2365-1 to 2365-4 gives to the state or a political subdivision thereof a right, prior to the right of any subcontractor, materialman, or laborer, to participate to any extent in the amount due on the bond. If suits are permitted to be brought against the surety company at any time before acceptance of the improvement, it might easily occur that such suits would consume the entire penal sum of the bond, leaving the improvement to be completed at the expense of the state. It is impossible to maintain the priority of the rights of the state unless' suits on the part of those who furnish labor and materials shall be deferred until after acceptance of the improvement.
 

 As stated in
 
 Cement Co.
 
 v.
 
 McCord, supra,
 
 the right of those furnishing labor and materials to sue the surety is purely a creature of the statute, providing a special remedy, and all of the conditions of the statute creating the right and providing the remedy are jurisdictional conditions precedent to the bringing of such action.
 

 The determination of the highway commissioner, the resident deputy state highway commissioner, and the state engineer, was not officially made until December 19, 1924. It is clear, therefore, under this record, that the improvement had not been ac
 
 *43
 
 cepted by any authorized board or officer, prior to January 2, 1924. The action was therefore prematurely brought and could not legally be maintained.
 

 For these reasons, the judgment of the Court of Appeals will be reversed.
 

 Judgment reversed.
 

 Day, Kinkade, Jones and Matthias, JJ., concur.