reasons clearly untenable or to an extent clearly unreasonable."

It will readily be seen from the foregoing authorities that the averments of the answer in this case are insufficient; that they do not show that the council of the village of Oakwood in the exercise of the authority to determine as to whether or not the grade crossings in question will be beneficial to the village, have been guilty of an abuse of the discretion vested in them by law. There is nothing in the answer which indicates either ulterior motive, fraud, malicious intention, or caprice on the part of the legislative body of the village, and since the contract which they authorized and entered into with the city of Dayton is in accord with the general law, and is made within the provisions of Section 3615-1, this defendant is bound, as a ministerial officer of the village, when so directed to advertise the bonds for sale under the Uniform Bond Act of the state, and the answer shows no reason why the relator is not entitled to the remedy here sought. (12 Ohio, p. 54.)

The demurrer is sustained.

Municipal Court of Cincinnati.

HENRY THOMAN v. GENERAL CASUALTY & SURETY CO.

Decided July 21, 1930.

*Clarence M. Smith,* attorney for defendant.
*J. R. Samuels* and *John H. Doyle,* attorneys for plaintiff.

HESS, J.

This action grows out of a judgment obtained by Henry Thoman against one Donald Callahan in Case No. 118249 on the dockets of the Municipal Court of Cincinnati on the 24th day of July, 1929, in the amount of $237.69 and costs. The said judgment was based on a claim for damages sustained by Thoman as a result of his automobile being damaged when the automobile driven by Callahan collided with that of Thoman.

It appears from the record that Callahan had rented the automobile in question from the Kissel-Skiles Company, Inc., on the 7th day of April, 1929. The plaintiff in this action attempts to collect from the defendant, the judgment above referred to in pursuance to the terms of an ordinance of the city of Cincinnati regulating public vehicles and public vehicle drivers and known as ordinance No. 50-1929.

It appears from the record that on the first day of March, 1929, the Kissel-Skiles Company, Inc., was in the business of renting automobiles for hire to persons who would drive the automobile. The business is sometimes referred to as Driverless auto for hire and is so designated in said ordinance No. 50-1929.

On the 6th day of February, 1929, the Council of the City of Cincinnati passed the ordinance above referred to providing certain conditions to be complied with by any driverless auto for hire company before they could obtain a license to operate said business.

It appears from the record that on the 7th day of April, 1929, the defendant in the instant case was operating its said business in pursuance to a license previously issued to it by the city of Cincinnati and that on the 7th day of April, it rented to one Donald Callahan one of the automobiles used in its business, which automobile was to be operated by the said Callahan and that while the said automobile was under the care, custody, control and operation of the said Donald Callahan it came into collision with an automobile owned by Henry Thoman and caused the damage to the said Henry Thoman in the amount of $237.69.

The negligent operation of the car driven by Donald Callahan was definitely established by the rendition of a judgment in the Municipal Court of Cincinnati in case No. 118249.

On March 1, 1929, Kissel-Skiles Co., Inc., in pursuance to said ordinance No. 50-1929 deposited with the City Treasurer a certain insurance policy in compliance with Sections 65-7-8-9-10 of said ordinance. It appears from the record that said insurance policy was approved by the City Treasurer as to its sufficiency and by the City Solicitor as to its legality as provided in 65-7 of said ordinance.

It is maintained by the defendant in this action that the plaintiff cannot maintain his action against it by reason of the fact that the defendant herein did not receive notice of the suit filed against Callahan by Thoman and that said Callahan failed to co-operate with the insurance company in providing his co-operation as set forth in the said insurance policy deposited with the City Treasurer.

Section 65-7 of said ordinance No. 50-1929, provides as follows:

*"Liability Insurance Required.* No license to operate any public vehicle shall be issued or renewed by the City Treasurer, and it shall be unlawful to operate any such public vehicle, or permit such to be operated, unless and until the applicant shall deposit with the City Treasurer a policy or policies of liability insurance issued by a responsible insurance company, approved as to sufficiency by the City Treasurer, and as to legality by the City Solicitor, providing indemnity for or protection to the insured against loss in the amounts provided for in Section

65-8, 65-9 and 65-10, and agreeing to pay within the limits of the amounts fixed in said sections to any judgment creditor who shall have filed his suit or filed notice of a claim for such loss with the City Treasurer during the license year in which the injury occurred or six months thereafter any final judgment rendered against the insured by reason of the liability of the insured to pay damages to others for bodily injuries, including death, at any time resulting therefrom, and for damages to or destruction of property sustained during the term of said policy by any person other than employees of the insured, and resulting from negligent operation, maintenance or use of such licensed public vehicles.

The policy of insurance aforesaid and the bond given in lieu thereof as hereinafter referred to shall provide that in case the vehicle is operated, maintained or used with the consent or acquiescence of the owner, by one other than the owner, his agent or employee, and an injury results to person or property as indicated above, due to the negligent operation, maintenance or use of said vehicle, that the insurer or the obligors in the bond as the case may be, shall pay to the judgment creditor of said person so maintaining, using or operating said vehicle any final judgment rendered against said person so maintaining, using or operating said vehicle, provided that said judgment creditor shall have filed his suit, or filed notice of claim for such loss in all respects as is provided for the judgment creditor of the insured in the foregoing paragraph.

The policy or policies of insurance and the sureties hereinbefore required, shall be valid and effective for no less a period than that for which the license is issued."

It will be observed from a reading of this section that the ordinance is absolute in its terms and sets forth the way in which an injured party may proceed in order to recover for damages resulting from the negligent operation, maintenance or use of licensed public vehicles.

The second paragraph of said Section 65-7 leaves the insurance company no alternative except to pay in the event a claim against the driver of a licensed drive it yourself automobile is reduced to final judgment within the time specified in said ordinance.

The policy of insurance deposited with the City Treasurer by the Kissel-Skiles Co., Inc., carries the usual provisions of liability insurance policies with respect that the

company be given notice of the accident, served with copy of the summons in any suit filed against the assured, etc.

"Upon the occurrence of an accident involving bodily injuries or death, or damage to property of others, the assured shall give immediate written notice thereof with the fullest information obtainable at the time to the Home Office of the Company or to one of its duly authorized agents. The assured shall give like notice with full particulars of any claim made on account of such accident. If suit is brought against the assured to enforce such claim the assured shall immediately forward to the Home Office of the company every summons or other process that may be served upon the assured."

"In connection with accidents coming within paragraphs 1 and 2 of the Insuring Agreements the assured shall not voluntarily assume any liability, nor incur any expense other than for immediate surgical relief, nor settle any claim, except at the assured's own costs * * * and shall co-operate with the company (except in a pecuniary way) in all matters which the company deems necessary in the defense of any suit or in the prosecution of any appeal."

It appears from the record that Callahan in the suit referred to as 118249 did not serve the insurance company with a copy of the summons nor lend any co-operation and absolutely ignored the summons he received and so far as the record is concerned, the defendant in this case is without notice. If the terms of the insurance policy are absolute and binding upon Henry Thoman then he cannot recover. If, however, the ordinance is controlling then the said Henry Thoman may recover from the insurance company in this action.

The ordinance above referred to was enacted in order to protect the public against damages occasioned by reason of the negligent operation of public vehicles. When the defendant in this case insured the Kissel-Skiles Co., Inc., and the operators of its automobiles it thereby set out to comply with the terms of said ordinance and cannot later take advantage of provisions in its contract of insurance which are not compatible with the terms and conditions of said ordinance.

It has been decided by our own Supreme Court in the case of *The American Guaranty Co.* v. *The Cliff Wood*

*Coal and Supply Co.,* 115 Ohio St., 524, that a bond or undertaking given pursuant to Sections 2365-1 to 2365-4 of the General Code is controlled by and subject to the provisions of said statute with regard to recovery and that the party undertaking to insure is chargeable with notice of the provision of the statute. The law charges the surety company with notice that it is entering into what is termed a public obligation for which they will be relied upon by persons who can in no manner control the conduct of the nominal obligee.

"That parties to a contract cannot take themselves from under the statute that was passed for the protection of the public by writing into such contract, terms that are antagonistic to the statutes." *City of Cleveland* v. *East Ohio Gas Company,* 34 O. S., 97.
"The statute itself is read into and becomes a part of the contract." 121 O. S., page 600.

Counsel for the defendant relies in part upon the case of *U. S. Casualty Co.* v. *Breese,* 21 O. A., 521. This case is clearly distinguishable from the case at bar as the ordinance in that case provides that the insurance company shall be liable only in accordance with the terms of its policy and the ordinance explicitly makes the right of recovery dependent upon the terms of the policy of insurance, whereas in the case of Ordinance 50-1929 of the Ordinances of the city of Cincinnati, the language is absolute in fixing the liability of the insurance company in the event the claim is reduced to judgment.

In the endorsement attached to the insurance policy deposited with the City Treasurer by the Kissel-Skiles Co., Inc., the insurance company uses the words "indemnity" but refers in the body of the contract to "insurance" and to use the language of Endorsement No. 2:

"In consideration of the premium rates at which this policy is written, it is hereby understood and agreed that this policy is *extended* to indemnify the operator of any car insured under the within policy against loss on account of the liability, imposed by law for injuries to persons, except employees of the operator, guests, or occupants of the said automobiles."

143

It would seem therefore that the conditions of the policy are extended to the benefit of the plaintiff in this action.

The authorities are too numerous to mention holding that the contract is to be construed against the party making it and if this construction is true then the insurance provided for the Kissel-Skiles Co., Inc., extends to the driver of the automobile.

It would appear that a strict interpretation of this ordinance would place a hardship upon the insurance company in that judgments would be obtained without its notice and it might open the door to fraud, nevertheless, the company knew of this condition at the time of writing the undertaking and cannot now be heard to object to the unreasonable provisions of the ordinance. If the ordinance is constitutional and it has been so held by the Court of Appeals of this district, then the terms of said ordinance are controlling and its provisions are as a matter of law read into the insurance contract and its provisions are binding upon the insurance company regardless of the restrictions the company might insert in said policy.

An entry may be drawn granting judgment to the plaintiff for the amount sued for.

Common Pleas Court of Montgomery County.

NELSON V. VILLAGE OF OAKWOOD ET AL.

Decided June 7, 1929.