BEN-TOM CORPORATION *v.* THE BUCKEYE UNION CASUALTY COMPANY.

(No. 214614—Decided December 8, 1964.)

*Mr. John A. Jenkins*, for plaintiff.
*Messrs. McNamara & McNamara* and *Mr. John J. Petro*, for defendant.

GESSAMAN, J. The plaintiff seeks to recover from defendant the sum of $5,803.09. A jury was waived and the cause has been submitted to the court on the pleadings, the evidence and the briefs of counsel.

Stated as briefly as possible, the facts are that in October 1959, the City Council of the city of Oberlin, Ohio, accepted the bid of Zimmerman Company, Inc. (hereinafter referred to as Zimmerman), to construct a waterworks reservoir and appurtenances. A formal contract was entered into (herein referred to as Contract A.), (plaintiff's exhibit 12 and defendant's exhibit B.). In accordance with the terms of the contract and the terms of Section 153.54, Revised Code, Zimmerman, as principal, and defendant, The Buckeye Union Casualty Company, as surety, executed a bond to the city of Oberlin (plaintiff's ex-

hibit 3). As part of the contract, Zimmerman was obligated to furnish and erect 7,535 lineal feet of fence. On October 20, 1959, Zimmerman and plaintiff entered into an agreement whereby plaintiff agreed to furnish and erect the fence (plaintiff's exhibit 4). The plaintiff subcontracted its work to Continental Fence Company.

In November 1960, Buckeye learned that Zimmerman had not completed its contract with Oberlin. Shortly thereafter a Mr. Karsko, representing Buckeye, inquired of plaintiff as to when the fence work would be completed.

On November 14, 1960, Buckeye filed with the Recorder of Richland County, an assignment by Zimmerman to Buckeye of all moneys due it under its contract with Oberlin.

On February 9, 1961, the City Manager of Oberlin mailed to Buckeye "a check in the amount of $31,539.63, representing the balance due Zimmerman Company, Inc., less 3% retainage of $8,149.38" (plaintiff's exhibit 6). In that letter the city manager instructed Buckeye that "You are authorized to have this check cashed and the proceeds held until February 21, 1961, when final acceptance by ordinance will be passed." On February 20, 1961, the council of Oberlin adopted the following resolution (defendant's exhibit A):

"RESOLUTION No. 435 CMS
Approving the Final Estimate Submitted
Under Contract 'A'—Upground Storage
Reservoir—Emergency.

"Whereas, the consulting engineers of the city of Oberlin have on the 12th of January, 1961 and January 19, 1961, certified estimate No. 12, final, that the Zimmerman Construction Co., Inc., have completed on contract 'A' for the construction of upground reservoir, and there are monies now due said contractor under said contract 'A.'

"Now, therefore, be it resolved by the Council of the city of Oberlin, Lorain County, Ohio, five-sevenths (5/7s) of the members elected thereto concurring:

"Section 1. That estimate No. 12, being the final estimate under contract 'A,' upground storage reservoir, as computed by the consulting engineers, Burgess & Niple, be, and the same is hereby approved.

"Section 2. That said work completed by Zimmerman Con-

struction Co., Inc., is hereby accepted under the terms of the contract with said Zimmerman Construction Co., Inc.

"Section 3. This resolution is hereby declared to be an emergency measure necessary for the immediate preservation of the health, safety and welfare of the citizens of Oberlin, Ohio, to wit: The completion of certain improvements to the water supply system of the city and shall take effect immediately upon passage.

"Passed: Emergency 2/20/61
"Attest:
"Ruth B. Grogg,
Clerk of Council

Eric Nord,
Chairman of Council."

Shortly thereafter Buckeye distributed the $31,539.63 received from Oberlin but nothing was paid to the plaintiff.

On May 17, 1961, Zimmerman sent to plaintiff the following letter (plaintiff's exhibit 7):

"Mansfield, Ohio
"May 17, 1961.

"Ben-Tom Supply Company
297 South High Street
Columbus 15, Ohio.
"Attention: Mr. W. A. James

"Re: Upground Storage
Reservoir, Oberlin

"Dear Sir:

"Last Wednesday I went up to the above reference job site with Mr. Walter Cole, of Burgess & Niple—Consulting Engineers on the job. I have since received a letter from him, listing several items needing attention. They are as follows:

"1. Fill all ruts or depressions on the embankment berm and reseed these and any other areas on the berm where the grass has not taken hold.

"2. Reseed the southwest embankment corner slope at approximately sta. 60/00 to 61/00 as required.

"3. Grade between toe of embankment and fence at southwest corner of reservoir to remove ruts and provide better drainage.

"4. There are several ruts and areas where the embank-

ment has sloughed off along the east slope. These areas are to be repaired and reseeded. An inspector must be present when this work is being done.

"X 5. Put clamps on barb wire strands across the double gate along Parsons Road at the northeast corner of the reservoir. The existing strands of barb wire are loose, and are not attached with clamps as are the other gates. The gate itself sags, and does not close properly. Make whatever adjustments required to plum gate so it operates properly.

"X 6. Add extra strands of barb wire along bottom of the fence where the fence is too high above the ground. There is a section of fence across the ravine at the east property line where this should be done.

"X 7. The double gate on West Road does not close properly. Perhaps longer hinges could be installed to make a better closure.

"X 8. The line posts at the back corner (southeast) are bent and should be reset and straightened. Also the wire fence and barb wire strands are very loose in this area, and should be tightened and reattached to the posts.

"X 9. There is a section of fence along Parsons Road below the treatment plant where the strands of barb wire are loose and should be retightened.

"10. Not required."

"The above items which should be taken care of under your contract for putting up the fence are marked with an 'X.' The other items do not pertain to your work, so disregard them.

"We are most anxious to clear up the work on this project, so we would appreciate very much your letting us know how soon you can get at it.

"Very truly yours,
"Zimmerman Company, Inc.
"JJX/rt                     S/Joseph L. Zimmerman."

This letter is one of the factors upon which plaintiff relies to base its claim against Buckeye. The work referred to in the letter was completed in May 1961. It will be noted that the items marked with an "X" and which applied to the plaintiff, are in the nature of repairs or replacements—not new work.

On October 13, 1961, the plaintiff sent the following letter (plaintiff's exhibit 8) to Buckeye:

"October 13, 1961

"Buckeye Union Casualty Co.,
 E. Broad St.,
 Columbus, Ohio
"Attn: Mr. John Karsko,

"Re: Zimmerman Company
 Mansfield, Ohio
 City of Oberlin Reservoir,

"Gentlemen:

"In line with our telephone conversation today, we are enclosing herewith copy of our invoice on the above contract.

"It is our understanding that your company has taken over the payment of bills on this particular job, and we would appreciate your entering our invoice for payment at an early date.

"Thanking you for your attention, we remain,

"Yours very truly,
"WAJ/eh                    Ben-Tom Corporation
 Encl.                     W. A. James"

Buckeye replied to this letter as follows by letter of October 17, 1961 (plaintiff's exhibit 9):

"October 17, 1961

"Ben-Tom Corporation
 1237 Dublin Road
 Columbus 12, Ohio
"Attention: Mr. W. A. James
 "Re: Zimmerman Company
     City of Oberlin Reservoir
"Dear Mr. James:

"This will acknowledge receipt of your letter of October 13, 1961, concerning your claim against Zimmerman Company for work performed on the City of Oberlin Reservoir.

"In your letter you state that it was your understanding that our company had taken over the payment of bills on this particular project. This is not a correct statement since at no

time did we take over the Zimmerman Company, and the only obligations that we assumed on this project were those which constituted valid claims under the bond we executed in favor of the City of Oberlin.

"This project was accepted by the City of Oberlin on February 21, 1961. The bond we executed on behalf of Zimmerman Company was a statutory form of bond, and any claimant must give us notice within ninety days from the acceptance of the contract. The first notice we had of your claim was your letter of October 13, 1961. Since you failed to comply with the statutory provisions, we cannot honor your claim.

"Very truly yours,
Buckeye Union Casualty Company
By S/ John S. Karsko."

"JSK: bs

The engineering firm of Burgess and Niple was the consulting engineer on the project involved in the Zimmerman contract. On January 16, 1962, that firm wrote the following letter to the City Manager of Oberlin (plaintiff's exhibit 11):

"January 16, 1962
"Final Payment Paid To:  Buckeye Union &
Casualty Company
Columbus 16, Ohio.

"Mr. Richard Dunn
City Manager
Municipal Building
Oberlin, Ohio.
"Re:  Oberlin Upground Storage Reservoir
Contract 'A'

"Dear Mr. Dunn:

"The work on the referenced contract was completed on January 12, 1961. The year guarantee period was up on January 12, 1962.

"Inspections were recently made of the reservoir and the work was found to be in good order. We, therefore, recommend that the three per cent of the monies retained ($8,149.38) be released to the Contractor as final payment.

"We seem to recollect that this mony was to be released to the bonding company. I have tried to contact Mr. Karsko but find that he is out of town and will not be in until next week. If

your records do not indicate dispositing of this money, let me know and I will try to reach Mr. Karsko next week.

"Very truly yours,
"Burgess & Niple
"MS: mr                           S/ Michael Stoyak
"cc:   Zimmerman Construction Co.
        600 Connor Drive
        Mansfield, Ohio."

The money was released to Buckeye, under its assignment, and disbursed by it. None of it was paid to the plaintiff. On July 23, 1962, the petition in this case was filed with the clerk of this court.

Buckeye has refused to pay the plaintiff on the ground that it did not furnish Buckeye with a statement of the amount due it "not later than ninety days after the acceptance of such building, work or improvement by the duly authorized board or officer * * *." Section 153.56, Revised Code.

Another of Buckeye's defenses is that this action was not "commenced not later than one year from the date of acceptance of said building, work or improvement." (Same section.)

Counsel for the plaintiff contends that that Section 735.072, Revised Code, precludes final acceptance until payment of the final retainage. Without setting forth that section in full, it is our opinion that there is nothing in it which postpones the date of "acceptance" to the date of the payment of the final retainage.

By the provisions of Section 33 of contract A. when the engineer determines that "All of the work contemplated by this contract is completed * * * he shall prepare a final estimate of the same and the owner shall within fifteen days * * * make payment of ninety seven per cent of the amount of said estimate less previous payments * * *." In section 35 of contract A, the parties agreed that the owner (Oberlin) "is hereby authorized to retain for a period of one year subsequent to the date of final acceptance of the work * * * the sum of three per cent of the amount of the contract * * *." Section 36 of contract A provides for the payment of the three per cent. reserve to the contractor (Zimmerman) at the end of "said period of one year," less any amount expended in making repairs. Considering these sections, with the action of city council, it seems quite clear that

the "acceptance" of the work was on February 20, 1961, when the resolution above referred to was adopted by the Council of the city of Oberlin.

In *Southern Surety Co.* v. *Schmidt,* 117 Ohio St. 28, Judge Marshall, speaking for the court, said at pages 40 and 41, that "the acceptance under Ohio statute must be an administrative determination of the actual completion of the work in accordance with the terms of the contract and in compliance with the plans and specifications, and this must be fixed by public record and readily ascertained." Such determination was made by the adoption of the resolution of February 20, 1961, and the distribution of the $31,539.63.

In the cases of *Johnson Service Company* v. *American Casualty Co.,* both found in 77 Ohio Law Abs., one at page 503 and the other at page 508, the court held that a formal resolution of acceptance was not necessary and that other acts could constitute acceptance. It held also that the provisions for the filing of a statement with the bonding company within ninety days after the acceptance and filing of a suit within one year were mandatory. Both of these cases originated in this court and both judgments were affirmed by the Court of Appeals. See, also, *Atkinson* v. *Orr-Ault Construction Co.,* 124 Ohio St. 100.

Section 34 of contract A provides in part:

"The contractor shall make all repairs due to defective workmanship or material for a period of one year after the date of the final estimate * * *."

According to the resolution of the Oberlin City Council of February 20, 1961, the final estimates were certified on January 12, 1961, and on January 19, 1961. The work done after February 20, 1961, by the plaintiff and as disclosed by plaintiff's exhibit 7 were "repairs" which they were obliged to make under Section 34, supra. The fact that they were instructed to and did do the work, did not change the date of "acceptance" of the work.

Counsel for the plaintiff contends that Buckeye is estopped from asserting its defense by reason of its conduct. In support of this counsel says (1) that Buckeye had full knowledge of plaintiff's contract (this is a correct statement but it does not increase its obligation); (2) that Buckeye urged plaintiff to complete the subcontract for the purpose of receiving money on

the prime contract (plaintiff was bound by its contract to complete its work regardless of any urging); (3) that prior thereto Buckeye had taken a formal assignment of all the assets of Zimmerman, including the balance due from Oberlin, leaving no assets to pay plaintiff (the assignment was taken but this would not have injured the plaintiff had it submitted its statement and, if necessary, filed its suit in time); and (4) that plaintiff proceeded with its work after dealing with the representatives of Buckeye (this apparently is true, but plaintiff did only that which its contract obligated it to do). Therefore, we find nothing upon which to base an estoppel.

Counsel for plaintiff has suggested that Buckeye has "an implied obligation to pay the plaintiff by reason of all the facts in evidence." He has not briefed this point and therefore we assume that he has abandoned it. Furthermore, we find nothing in the evidence upon which to base an implied promise or an "implied obligation."

Finally, counsel for plaintiff urges that Buckeye is liable under the performance obligation of its bond. It is true that the provisions of the bond set forth the obligations of Buckeye and that these inure to the benefit of certain third parties. It is also true, as the authorities hereinabove set forth clearly disclose, that a claimant must comply with the provisions of Section 153.56 of the Revised Code in order to enforce his rights.

Upon a consideration of all the evidence, our conclusions are that there was an acceptance of the work in question within the meaning of Section 153.56 of the Revised Code on February 20, 1961; that the furnishing of a statement by plaintiff to Buckeye on October 14, 1961, and the filing of this suit on July 23, 1962, did not meet the requirements of Section 153.56 of the Revised Code and that plaintiff's right to recover must be predicated upon compliance with the requirements of that statute. Therefore we find for the defendant.

In view of this finding, other matters discussed by counsel for the defendant need not be considered.

*Judgment for defendant.*