Robinson, J.
 

 Section 2365-1, General Code, provides :
 

 “That when public buildings *
 
 *
 
 * are about to be constructed * * * at the expense of the * * * city * * * or school district thereof, it shall be the duty of the board * * * contracting on behalf of the * * * school district, to require the usual bond as provided for in statute with good and sufficient sureties, with an additional obligation for the payment
 
 *61
 
 by the contractor, and by all subcontractors, for all labor performed or materials furnished in the construction, erection, alteration or repair of such building.”
 

 Section 2365-2, General Code, provides that such bond be conditioned “for the payment by the contractor and by all subcontractors, of all indebtedness which may accrue to any person, firm or corporation, on account of any labor performed or materials furnished in the construction, erection, alteration or repair of such building.”
 

 The form of bond provided by Section 2365-4, General Code, to make effective the provisions of Sections 2365-1 and 2365-2, contains as a part of the condition that the principal “shall pay all lawful claims of subcontractors, materialmen and laborers, for labor performed and materials furnished in the carrying forward, performing or completing of said contract.” And further contains the provision:
 

 “We agreeing and assenting that this undertaking shall be for the benefit of any material man or laborer having a just claim, as well as for the obligee herein.”
 

 The bond in this case was conditioned, in so far as its condition is here under consideration, in the exact words of the form provided in Section 2365-4, General Code, except that for the word “obligee,” the name of the board of education is substituted.
 

 The question in this case is whether the terms of Sections 2365-1 and 2365-2, General Code, are broad enough to cover claims for rental, repairs, and transportation of machinery used as an appliance or equipment to facilitate the construction
 
 *62
 
 of a public school building, for it is apparent that while the wording of the form of bond provided in Section 2365-4, General Code, is different from the wording in Sections 2365-1 and 2365-2, and, standing alone, somewhat broader in its significance, the scope of the bond is to be determined by the provisions of Sections 2365-1 and 2365-2, General Code, since the form provided by Section 2365-4 was for the purpose of making effective those sections, and, since the Legislature provided the form of the bond, the obligation of the contractor and his surety in the use of that form will not be interpreted to have contemplated any obligation broader than the provisions of the sections requiring the execution of such bond.
 

 It is significant that in Sections 2365-1 and 2365-2, General Code, the persons, in addition to the contracting obligee for whose benefit the bond is executed, are designated as those performing labor and those furnishing material, and that in the form of the bond provided in Section 2365-4, General Code, they are designated as “subcontractors, materialmen and laborers,” and that no reference can be found in the statute to men furnishing equipment or appliances.
 

 The word “material” has a well-defined and understood legal significance.
 

 Bouvier’s Law Dictionary defines materials as “matter which is intended to be used in the creation of a mechanical structure,” and defines materialmen as “persons who furnish materials to bo used in the construction or erection of ships, houses, or buildings.”
 

 
 *63
 
 39 Corpus Juris, p. 1385, defines material thus:
 

 “In General.
 
 A term importing the substance matter of which anything is made.'
 

 “The substance or matter of which anything is made or may be made; everything of which anything is made; matter which is intended to be used in the creation of a mechanical structure. The term ‘material’ is commonly used to designate any article employed in the erection and completion of buildings. * * * According to the lexicographical definitions of the term, ‘material’ does not include tools, machinery, or appliances used for the purpose of facilitating the work but which are not incorporated into the structure. So it does not include machinery that may be used for the manufacture of the materials themselves.”
 

 3 Words and Phrases (Second Series), page 326, reads:
 

 “There is a wide distinction between ‘material’ and ‘appliance.’ The term ‘appliance’ refers to machinery and all the instruments used in operating it. ‘Materials’ include everything of which anything is made.”
 

 In 5 Words and Phrases, at page 4410, we find:
 

 “A hammer, shovel, hoe, chisel, mallets, etc., though necessary implements for laborers, are not materials for which a lien will lie. * * *
 

 “The term ‘materials,’ in a statute giving a lien to materialmen for materials sold to be used in constructing certain improvements, means materials which become a part of the completed work, and does not include tools of trade, as picks, shovels, etc.
 

 
 *64
 
 “Tools and appliances used in raising a building so that another story may be built thereunder are not materials furnished to be used in the construction, alteration, or repair of the building, within the meaning of the lien law, but are mere tools and appliances used by the workmen for the purpose of facilitating the work.”
 

 18 Ruling Case Law, p. 918:
 

 “The general rule is that articles furnished for use merely as tools and appliances in carrying on the work of construction are not materials for which a mechanic’s lien may be claimed.”
 

 It is true some, but not all, of these excerpts, which constitute but a small proportion of similar excerpts which might be quoted, relate to and are taken from cases involving the construction and application of the Mechanic’s Lien Law, but in Ohio there is an analogy between the liability of the owner of the building, or structure, under the Mechanic’s Lien Law and the liability of the surety upon the contractor’s bond for the construction of a public building under Sections 2365-1, 2365-2, 2365-3, and 2365-4.
 

 Donnelly, on the Law of Public Contracts, p. 469, par. 331, says:
 

 “The general rule is that the bond is only liable for labor or materials furnished or supplied which have gone into and become a part of the work. Accordingly it is generally ruled under bonds given on state and city work that no recovery can be had for machinery used or repaired in the prosecution of the work. A contractor is presumed to be prepared with machinery, tools and appliances necessary to carry out his con
 
 *65
 
 tract. These are furnished' upon his own credit presumably and not upon the implied credit of the public. They survive the performance of the work, do not become a part of it and may be used upon other work.”
 

 In the case of
 
 Beals
 
 v.
 
 Fidelity & Deposit Co.,
 
 76 App. Div., 526, 78 N. Y. S., 584, the court had under consideration the exact question under consideration here. A bond was given by the contractor in accordance with the statutes of New York to “well and truly pay for all materials used and services rendered in the execution of such contract,” and provided “that any person * * * furnishing material or rendering services in or about the execution, of such contract ’ ’ might “maintain an action to recover for the same,” and the court held that “tools and implements which are used in the performance of a contract for the construction of a retaining wall and survived its performance, are not ‘materials’ within the meaning of an undertaking, conditioned that the contractor would ‘well and truly pay for all materials used and services rendered in the execution of such contract,’ and ‘that any person * * * furnishing material or rendering services in or about the execution of such contract’ might ‘maintain an action to recover for the same.’ ”
 

 In the case of
 
 City of Alpena
 
 v.
 
 Murray Co.,
 
 159 Mich., 336, 123 N. W., 1128, the court had under consideration Section 10743 of the statutes of Michigan which provides that, when a public work is to be built at the expense of the-city, the agent contracting in behalf of the city shall require a bond for the payment by the contractor for all
 
 *66
 
 labor performed or materials furnished, and the court there held:
 

 “A recovery may not be had upon the statutory bond given by a contractor engaging in the „ construction of public buildings and works, for the value of cartage of supplies to and from a dredge which was used in the performance of the contract.”
 

 In the case of
 
 Bay State Dredging & Contracting Co.
 
 v.
 
 W. H. Ellis & Son Co.,
 
 235 Mass., 263, 126 N. E., 468, it was held:
 

 “A
 
 staging and falls, used in the work of painting and plastering a public pier and steel shed but not made a part thereof, are not labor performed or furnished or material used in ‘the construction or repair of public buildings or other public works’ within the intendment of E. L. c. 6, Section 77.”
 

 In the case of
 
 Massachusetts Bonding & Ins. Co.
 
 v.
 
 Chouteau Trust Co.,
 
 264 F., 793, in the Circuit Court of Appeals of the United States, it was held:
 

 “The contractor’s bond in question is provided, in the scheme of public improvement of the city, to take the place of the statutory liens of laborers and materialmen under the lien laws of the state.”
 

 Upon a rehearing of that case
 
 (Chouteau Trust Co.
 
 v.
 
 Massachusetts Bonding & Ins. Co., 1
 
 F.[2d] 136, at page 139), that court held:
 

 “The Missouri statute referred to has a provision as follows: ‘And such bond, among other conditions, shall be conditioned for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise.’ The bond under this statute is
 
 *67
 
 clearly to cover claims for labor and material actually going into the construction of the work.”
 

 In the case of
 
 Wisconsin Brick Co.
 
 v.
 
 National Surety Co.,
 
 164 Wis., 585, 160 N. W., 1044, L. R. A., 1917C, 912, it was held:
 

 “Section 3327a, Stats., requiring a bond to be given for the payment of all claims ‘for work or labor performed, and material furnished in and about’ the erection of any building for the state, was not intended to give a remedy more extensive than that given by the mechanic’s lien statute, nor to give a remedy to any different classes of persons. ’ ’
 

 In the case of
 
 State for use of Gwyns Falls Quarry Co.
 
 v.
 
 National Surety Co.,
 
 (Md.), 128 A., 916, the Supreme Court of Maryland held:
 

 “Claim for rental, depreciation, and cost of re-delivery of steam shovel let to subcontractors is not for labor or material used in construction of road, within principal contractor’s bond under Code, Article 91, Section 36, though proportion of premium thereon was charged by contractor to subcontractors. ’ ’
 

 The contractor’s bond in that case included a condition that the contractor shall “pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them for such labor and materials for which the contractor is liable.” The statute under which the bond was executed provided that the obligors should “bind themselves therein to the payment of all just debts for labor and ma
 
 *68
 
 terials incurred by tbe bidder in tbe construction and improvement of the road contracted for.”
 

 In the case of
 
 U. S. Rubber Co. of California
 
 v.
 
 American Bonding Co. of
 
 Baltimore, 86 Wash., 180, 149 P., 706, L. R. A., 1915F, 951, it was held that the term “materials” includes “such articles only as enter into and form a part of the finished structure, or, it may be, such articles as are capable of being so used and are furnished for that purpose, while equipment is, what the word imports, the outfit necessary to enable the contractor to perform the agreed service; the tools, implements and appliances which might have been previously used or might be subsequently used by the contractor in carrying on other work of like character.”
 

 The defendant in error relies largely upon the rule prevailing in the federal courts upon federal contracts, Section 6923, U. S. Comp. Stats.; Section 6285, Barnes’ Fed. Code, contains the provision :
 

 “That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract.”
 

 While with some difficulty a distinction may be drawn between the provisions of the federal stat
 
 *69
 
 ute and the provisions of the Ohio statute, in that the federal statute provides for a payment by the contractor “to all persons supplying him or them with labor and materials in the prosecution of the work,” and the Ohio statute provides for the payment for “labor and material furnished to him in the construction of the building,” the federal statute, as interpreted by the Supreme Court of the United States, contemplating the requiring of surety for the payment for labor and material which facilitate the performance of the contract, and the Ohio statute, as we interpret it, contemplating the requiring of surety for the payment for labor and material which is furnished for incorporation, or is incorporated, in the public building itself, we prefer to place bur interpretation of the Ohio statute upon the evident intention of the Legislature to place laborers and materialmen, with respect to the construction of public buildings, on as favorable a basis of security of recompense as it has placed them with reference to the construction of privately owned buildings, and we reach this conclusion by comparing the wording of the sections here under consideration with the wording of Sections 8310 and 8311 of the Ohio Mechanic’s Lien Law, where the operating words, as distinguished from descriptive words, are identical, and for the further reason that the legislation itself discloses, no reason, and we know of none, why a person furnishing appliances or equipment to a contractor who is undertaking to construct a public building, which appliances he uses to facilitate him in the performance of his public contract, should be placed in a more favorable
 
 *70
 
 position with reference to security for compensation therefor than he would he for furnishing the same appliance or equipment to the same contractor to facilitate him in the performance of his contract in the construction of a building for a private person. And, since there is no federal constitution provision involved in the construction of our statute, in so far as it has any application to the facts involved in this case, we do not feel bound to follow the reasoning of the federal courts in the construction of the federal statute.
 

 As an illustration of the extreme length to which the United States Supreme Court has gone in interpreting the scope of the federal statute, we quote from the case of
 
 Brogan
 
 v.
 
 National Surety Co.,
 
 246 U. S., 257, at page 261, 38 S. Ct., 250, 251 (62 L. Ed., 703, L. R. A., 1918D, 776), wherein the court said:
 

 “This court has repeatedly refused to limit the application of the act to labor and materials directly incorporated into the public work. * * * In
 
 United States Fidelity Co.
 
 v.
 
 Bartlett
 
 [United States], 231 U. S., 237 [34 S. Ct., 88, 58 L. Ed., 200], where the work contracted for was building a breakwater, recovery was allowed for all the labor at a quarry opened 50 miles away. This included, as the record shows, the labor not only of men who stripped the earth to get at the stone and who removed the debris, but carpenters and blacksmiths who repaired the cars in which the stone was carried to the quarry dock for shipment; and who repaired the tracks upon which the cars moved. And the claims allowed included also the wages of sta
 
 *71
 
 blemen who fed and drove the horses which moved the cars on those tracks.”
 

 The same logic might well have extended the scope of the bond to include the farmer who produced the grain that was fed the horses, the stock-man who reared and the breeder who bred them, and—why stop there? The natural result of such interpretation might well be that the bond provided for the benefit of the laborers who perform labor which goes into the construction, and for the benefit of the materialmen who furnish material which is incorporated in the construction, would be divided among laborers and materialmen, indirectly and distantly related to or connected with the transaction, to such an extent that the aggregate of claims would exceed the amount of the bond and result in partially defeating the very purpose of the legislation: namely, the payment of the men who perform labor and furnish material “in the construction. ’ ’
 

 For these reasons we are disposed to give the construction to our statute that has generally been given to similar statutes by the other states rather than give it the construction that has been given the federal statute, because it seems-to us that that expresses the intention of the Ohio Legislature, and because we are unable to find any intention upon the part of the Ohio Legislature to warrant a construction such as the federal courts have given to the federal statute.
 

 We see no distinction between the status of one who leases an appliance to a contractor to facilitate the performance of his contract and one who sells an appliance to the same contractor for the same
 
 *72
 
 purpose. The ownership of the contractor in the appliance in the one case differs from the ownership of the contractor in the other only in degree. The reason for the preferment of the materialman, whose material has been incorporated in a public building and placed beyond any possibility of recovery, or repossession, does not apply to the manufacturer or dealer who supplies an appliance which never loses its identity, and never becomes an integral part of the public building.
 

 Judgment of the Court of Appeals reversed, and that of the municipal court affirmed.
 

 Marshall, C. J., Matthias, Allen and Kinkade, JJ., concur.