Marshall, C. J.
 

 The constitutional question presented relates to portions of Sections 2316 and 2365-1, General Code. The former section was enacted March 20, 1917 (107 Ohio Laws, 454), and states: “Such bond shall also be conditioned for the payment of all material and labor furnished for or used in the construction for which such contract is made. The bond may be enforced against the person, persons or company executing such bond, by any claimant for labor and material, and suit may be brought on such bond in the name of the state of Ohio on relation of' the claimant within one year from the date of delivering or furnishing such labor or material, in the court of common pleas of the county wherein such labor or material was furnished or delivered,” etc. That section applies only to public buildings erected by the state.
 

 Section 2365-1 was enacted on March 21, 1917 (107 Ohio Laws, 642), one day later than the former statute,'and in its pertinent parts provides: “With an additional obligation for the payment by the con
 
 *382
 
 tractor, and by all sub-contractors, for all labor performed or materials furnished in the construction, erection, alteration or repair of such building, works or improvements.” That section applies to public buildings erected by the state or any political subdivision of the state. Both sections, therefore, apply to the present controversy, and they are so similar in their provisions that either statute would be sufficient for the present case without the other. It is claimed that these laws, in requiring contractors to furnish bond for the payment of claims of sub-contractors, laborers, and materialmen, impair the obligation of contracts, and therefore violate Section 28, Article II of the Ohio Constitution. It is further claimed that they abridge the privileges and immunities of citizens, and are a limitation upon the freedom of contract, and that they therefore violate the provisions of the Fourteenth Amendment to the federal constitution.
 

 Although those statutes have been in existence twelve years, their constitutional validity has never before been argued in this court. Bonds with such conditions have been employed in public construction in a multitude of instances, and they have been enforced in the courts of this state in a very large number of cases. A number of cases have been decided by this court treating those provisions in the statutes as valid, and they have been enforced on that theory without any argument to the contrary.
 

 The first of these cases is
 
 Royal Indemnity Co.
 
 v.
 
 Day & Maddock Co.,
 
 114 Ohio St., 58, 150 N. E., 426, 44 A. L. R., 374, decided in 1926. In 1927 the case of
 
 Southern Surety Co.
 
 v.
 
 Schmidt,
 
 117 Ohio St., 29, 158 N. E., 1, was decided. Later in the same
 
 *383
 
 year,
 
 Southern Surety Co.
 
 v.
 
 Standard Slag Co.,
 
 117 Ohio St., 512, 159 N. E., 559, again enforced a bond in favor of materialmen. Three cases have been decided by this court affirming recovery on the part of materialmen and subcontractors where the statutes were not in all respects complied with. In
 
 Southern Surety Co.
 
 v.
 
 Chambers,
 
 115 Ohio St., 434, 154 N. E., 786, the condition was not written in the sub-contractor’s bond, but the advertisement for bids required a bond to be furnished in full compliance with the statute. It was held in that case that under such circumstances the provisions of the statute will be read into the bond.
 

 In
 
 American Guaranty Co.
 
 v.
 
 Cliff Wood Coal & Supply Co.,
 
 115 Ohio St., 524, 155 N. E., 127, it was again held that materialmen and sub-contractors may avail themselves of the security of the bond, although they are not expressly named therein. In that case >the condition of the bond was that the obligee should be indemnified against loss or damage arising from the failure of the principal to perform his contract without any express provision in favor of materialmen. In that case the bid bond fully complied with the statute. The only difficulty was that in executing the contractor’s bond there was a failure to insert the statutory condition. It was held that the bid bond was a part of the contract, and therefore a part of the contractor’s obligation, and therefore a part of the surety company’s obligation.
 

 In
 
 American Guaranty Co.
 
 v.
 
 Cincinnati Iron & Steel Co.,
 
 115 Ohio St., 626, 155 N. E., 389, an additional question was argued and decided, viz., the right of a materialman furnishing materials to a
 
 *384
 
 sub-contractor and who therefore had no direct contractual relation with the principal contractor. In that respect the case is similar to the instant case.
 

 In the three cases last named the statutory conditions were read into the bonds, although not expressly recited therein, on the principle that, the statute having required such a bond to be given, the contractor and the surety company must have contracted in relation to the statutes, and will be held responsible as though the statute had been fully complied with. This court has, therefore, in seven different cases recognized the validity of these statutes without expressly so declaring.
 

 Similar provisions are found in the statutes of other states of the Union, and, so far as we are able to discover, have been uniformly upheld. If there have been any cases decided in other jurisdictions declaring such provisions to be unconstitutional, they have not been brought to our attention. Certain cases from other jurisdictions have been cited in this case as authorities, placing limitations upon the right of a legislature to hold the owner of property chargeable with mechanics’ liens for labor and materials furnished, where the contract was not made with the owner. It is not necessary to look to other jurisdictions for a decision upon that principle. This was so decided in
 
 Palmer & Crawford
 
 v. Tingle, 55 Ohio St., 423, 45 N. E., 313. Where an owner contracts with a contractor for the erection of a building at a given price, it becomes an impairment of that contract to permit liens to be established against the property of the owner as the result of a contract to which he was not a party, and where the liens increase the contract cost of the
 
 *385
 
 building. On the other hand, when an owner enters into a contract with a builder, and the owner feels a moral responsibility for the payment of all materials and. labor entering into the building, and accordingly stipulates in the contract that the contractor shall pay the entire cost, it places that responsibility upon the contractor himself, and he can only discharge that contract by making full payment. When he gives a bond, he is only assuring the fulfillment of his contract, and the surety company becomes liable for that for which the contractor was already liable. A private owner is fully justified in making such a contract in order to prevent his property from becoming incumbered by liens, whether valid or not. A public owner is justified, because in this state mechanics’ liens cannot attach to public ownership.
 

 The decision in the case of
 
 Palmer & Crawford
 
 v.
 
 Tingle, supra,
 
 is grounded upon the inalienable right of a citizen to the freedom of contract. That decision declared the mechanics’ lien law, as amended in 1894, to be unconstitutional as an unwarranted interference with the right of contract. ' It was held to be a violation of Section 28, Article II of the constitution, which prohibits laws impairing the obligations of contracts. Thereafter the constitution was amended in 1912, which specifically provided: “Laws may be passed to secure to mechanics, artisans, laborers, sub-contractors and material-men, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the constitution shall impair or limit this power.” Section 33, Article II.
 

 
 *386
 
 Even so, the amendment to Section 8310, enacted pursuant to that constitutional provision, made provision whereby the owner would be protected against payments in excess of the amount of the contract by requiring the contractor and sub-contractors to furnish affidavits of payment of labor and materials entering into the construction of the building. This was a statutory assurance against loss by complying with the conditions. It is now urged, inasmuch as no provision has been made by statute in Ohio whereby a surety company can be protected against claims for labor and materials, that Sections 2316 and 2365-1 are unconstitutional.
 

 Even if there were no possible way of protecting surety companies against loss, it does not follow that contracts of suretyship would be invalid for that reason. The contract is entered into with full knowledge of the statutory law. The surety company, as well as the principal contractor, is also presumed to know the state of the common law. It is urged that the contract of suretyship, pursuant to the mandatory provisions of the statute, renders the surety an involuntary surety. This view is not sound. The surety is not compelled to guarantee the performance of the contract. The principal contractor is not compelled to enter into his contract. It is a contract of suretyship and of guaranty which does not materially differ from other voluntary contracts of suretyship and of guaranty.
 

 It was decided by this, court in
 
 Royal Indemnity Co.
 
 v.
 
 Day & Maddock Co.,
 
 114 Ohio St., 58, 150 N. E., 426, 44 A. L. R., 374, that there was a certain analogy between Sections 2365-1 to 2365-4, inclusive, General Code, and the mechanics’ lien law,
 
 *387
 
 Sections 8310 and 8311, General Code. It is argued from that authority, in the instant case, thát the surety company is only liable for the payment of labor and materials in those eases where a mechanic’s lien could be secured, if the building were privately owned. The case only declared that principle in determining what character of materials would be required to be paid for by the surety on the bond. The question for determination in that case was whether the materials were “furnished in the construction, erection, alteration or repair of such building, works or improvement.”
 

 Such conditions in the bond are for the public benefit, because they insure confidence in the contractor, and therefore encourage responsible and capable persons to furnish labor and materials, and to contract for certain portions of the work, and at the same time insure a better quality of performance. The surety cannot, justly complain, because the character of the risk is fully known, and he may inquire as to the responsibility of the person or firm whose contract he agrees to insure. The principal contractor may likewise protect himself by requiring a bond of sub-contractors. It is difficult to see therefore how there can be any impairment of the obligations of a contract, or how any hardship can be inflicted if the parties will take ordinary business precautions. Similar statutes and the authorities which hold them to be constitutional are discussed in Dillon on Municipal Corporations (5th Ed.), vol. 2, Section 830, where numerous cases are cited; in Donnelly on the Law of Public Contracts, Sections 324, 325, 326 and 327; and in McQuillen on Municipal Corporations (2d Ed.), vol. 5, Section
 
 *388
 
 2107. It is purely a question of legislative power, and we do not doubt that the legislature has the power, and that in exercising it no constitutional provisions have been violated.
 

 Having found that the statutes are constitutional, it is not necessary to decide the question as to whether the bond was good without the statutory provision, and yet that question seems to have been disposed of by this court in its former decisions. In
 
 Cleveland Metal Roofing Co.
 
 v.
 
 Gaspard,
 
 89 Ohio St., 185, 106 N. E., 9, L. R. A., 1915A, 768, Ann. Gas., 1916A, 745, decided in 1914, and before there was any statute on this subject, it was held, in a case where the bond contained a condition for the payment of all claims contracted in reference thereto for material and labor furnished in the erection of the building, that such condition was for the protection of the owner of the building, and that an action on the bond against the surety could not be maintained for payment of claims against the contractor arising under contracts made subsequently to the execution of the bond. That case was, however, overruled in
 
 Royal Indemnity Co.
 
 v.
 
 Northern Ohio Granite & Stone
 
 Co., 100 Ohio St., 373, 126 N. E., 405, 12 A. L. R., 378, decided in 1919. The condition of the bond was that the contractor should do all the work and furnish all the materials, “at his own risk, cost and expense.” It was a contract between the city of Cleveland and a contractor for the construction of a viaduct, and it was held that the rule of strict construction of bonds, which is applied in case of voluntary sureties, does not apply to compensated sureties, and the surety company was held liable in a suit brought by materialmen. On the
 
 *389
 
 same day, this court decided
 
 State, ex rel. Marble Cliff Quarries Co.,
 
 v.
 
 Watts,
 
 100 Ohio St., 380, 126 N. E., 407, which involved a bond given upon a contract entered into with the state highway commissioner under Section 1203, General Code, enacted 103 Ohio Laws, 456. That statute was enacted in 1913, and required the highway commissioner to include in construction bonds a provision of indemnity against liens and claims for material and labor furnished in the construction of the improvement. It was held that this provision did not deprive the commission of the power to include in the bond a clause for payment of claims accruing to material-men and laborers. These decisions go a long way in holding such bonds to be enforceable even without statutory warrant. In
 
 Southern Surety Co.
 
 v.
 
 Chambers, supra,
 
 the opinion contains a discussion of the authorities in other jurisdictions concerning the validity of such bonds -as common-law obligations, and, while there are some authorities to the contrary, the conclusion is reached that the weight of authority is in favor of their validity without, statutory warrant.
 

 Upon both grounds, therefore, the motion to dismiss the petition in error in this case must be sustained.
 

 Petition in error dismissed.
 

 Kinkade, Robinson, Jones, Matthias, Day and Allen, JJ., concur.