Taft, J.
If the tests applied by this court under the mechanics’ lien law are applicable, Carver-Behan Company was a materialman of the general contractor and not a subcontractor, and plaintiff was a material-man of Carver-Behan Company. It is apparent therefore that, if those tests are applicable, the plaintiff was a materialman of a materialman of the general contractor.
Thus, the question to be determined is whether one who, under the tests applied under the mechanics’ lien law in distinguishing between a subcontractor and a materialman, is a materialman of a materialman of a general contractor may recover on a performance bond executed pursuant to the provisions of Sections 2365-1 to 2365-4, inclusive, General Code.
Except for the decision rendered by this court 27 years ago in American Guaranty Co. v. Cincinnati Iron & Steel Co., 115 Ohio St.., 626, 155 N. E., 389, the majority of this court might well hold that there could be no such recovery. As stated in paragraph four of the syllabus in Royal Indemnity Co. v. Day & Maddock Co., 114 Ohio St., 58, 150 N. E., 426, 44 A. L. R., 374:
*440 “There is such an analogy between Sections 2365-1, 2365-2 and 2365-4, General Code, and Sections 8310 and 8311, General Code, that it is apparent that, in the enactment of Sections 2365-1, 2365-2 and 2365-4, the Legislature intended to require the surety upon the bond required to be furnished by the contractor for the construction of a public building to be liable for such labor and material furnished for the construction of a public building as would be the subject of a lien under the mechanic’s lien law were the building privately owned.”
If a private building were involved, it is doubtful whether plaintiff, as a materialman of a materialman of the general contractor, could acquire a lien under the mechanics’ lien statutes. See DeWitt’s Ohio Mechanics’ Liens (with 1950 Supplement by Holmes), 11, Section 34; Demann’s Ohio Mechanic’s Lien Law (2 Ed.), 53, Section 3.5.
However, it is fair to assume that many performance bonds are now outstanding which were executed in reliance on the decision made in the American Guaranty Co. case, that surety companies and contractors have based their charges on the obligations which that case indicates will be imposed upon them by execution of performance bonds similar to that involved in the instant case, and that many who have or may have claims under such bonds have acted and their lawyers have advised them in reasonable reliance on the belief that this court would, as the Common Pleas Court and the Court of Appeals in the instant case did, follow that decision. Unlike the General Assembly, this court cannot, when it overrules such a decision, avoid the retroactive effect which such a step will necessarily involve. See 37 Harvard Law Review, 409, 426. We believe therefore that, if there is any reasonable basis for the decision rendered in the American Guaranty Co. case, this court should follow that decision and *441 leave it to the General Assembly to effect any change in the law for the future.
As appears from its syllabus, the American Guaranty Co. case allowed recovery on a performance bond “by a party who furnished to a materialman * * * material * * * which went directly * * * into the construction. ’ ’ The word ‘ ‘ materialman ’ ’ was used in the syllabus only to refer to a materialman of the general contractor. The facts of the case indicate that that materialman had contracted with the general contractor to furnish the material involved to the general contractor.
The ordinary meaning of the word “subcontractor” will include such a materialman who contracts to furnish material to a contractor for use in performing his contract.
Thus, in Ryndak v. Seawell, 13 Okla., 737, 76 P., 170, 173, it is said:
“In this case, Matkin had a contract for the construction of the entire building, which included the furnishing of all the material to be used therein. Sea-well contracted with Matkin to furnish the material for the building. In doing so, he agreed to perform a part of the contract which Matkin had obligated himself to perform. Why, under such circumstances, should not Seawell be held to be a subcontractor * # *.”
In Clifford F. MacEvoy Co. v. United States, 322 U. S., 102, 108, 88 L. Ed., 1163, 1168, 64 S. Ct., 890, 894, it is said:
“In a broad, generic sense a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor. In that sense Miller [a materialman] was a subcontractor.”
See also United States v. Clifford F. MacEvoy Co., 137 F. (2d), 565, 568; Holt & Bugbee Co. v. City of Melrose, 311 Mass., 424, 41 N. E. (2d), 562, 141 A. L. R., 319.
*442 Under our mechanics’ lien statutes, the word “subcontractor” is held not to include such a materialman only because of the specific definitions in those statutes of the words “subcontractor” and “materialman.” See Section 8323-9, General Code.*
See also Hihn-Hammond Lumber Co. v. Elsom, 171 Cal., 570, 154 P., 12, 14. Cf. MacEvoy Co. v. United States, supra.
There are no such definitions in Sections 2365-1 to 2365-4, inclusive, General Code, which will justify the giving of such a limited meaning to the word “subcontractor” as used in those statutes. In order to justify the giving of such a limited meaning to the word “subcontractor” in Sections 2365-1 to 2365-4, inclusive, General Code, it is necessary to infer that the General Assembly intended the definitions of the mechanics’ lien statutes to apply to the words “subcontractor” and “materialman” as used in Sections 2365-1 to 2365-4, General Code. As indicated by paragraph four of the syllabus in Royal Indemnity Co. v. Day & Maddock Co., supra, it might be reasonable to draw such an inference, although it is stated as follows in the opinion in the subsequent ease of Royal Indemnity Co. v. State, ex rel. Standard Sanitary Mfg. Co., 120 Ohio St., 378, 386, 166 N. E., 361:
“It was decided by this court in Royal Indemnity Co. v. Day & Maddock Co., 114 Ohio St., 58, 150 N. E., 426, 44 A. L. R., 374, that there was a certain analogy between Sections 2365-1 to 2365-4, inclusive, General Code, and the mechanics’ lien law, Sections 8310 and *443 8311, General Code. It is argued from that authority, in the instant case, that the surety company is only liable for the payment of labor and materials in those cases where a mechanics’ lien could be secured, if the building were privately owned. The case only declared that principle in determining what character of materials would be required to be paid for by the surety on the bond. The question for determination in that case was whether the materials were ‘furnished in the construction, erection, alteration or repair of such building, works or improvements.’ ”
We are of the opinion that it can be reasonably inferred from the provisions of Sections 2365-1 to 2365-4, inclusive, General Code, that the General Assembly did not intend that the word “subcontractor,” as used in those statutes, should be given such a limited meaning.
Although, as hereinbefore pointed out, the definition of “subcontractor” in the mechanics’ lien statutes is limited to such an extent as to exclude a materialman, the definition of that word in those statutes in other respects is expanded to include some who would not be included within the ordinary meaning of the word “subcontractor.” Thus, giving the ordinary meaning to the word ‘ ‘ subcontractor, ’ ’ that word would include one who has contracted with the contractor, but not one who has merely contracted with someone else who has contracted with the contractor, i. e., a subcontractor of a subcontractor.
Thus, in Webster’s New International Dictionary (2 Ed.), the word “subcontractor” is defined as “one who contracts with a contractor to perform part or all of the latter’s contract.” (Emphasis added.)
In Bouvier’s Law Dictionary (Rawle’s 3d Rev.), the word “subcontractor” is defined as “one who has entered into a contract, express or implied, for the performance of an act with the person who has already *444 contracted for its performance.” (Emphasis added.)
In 17 Corpus Juris Secundum, 314, Section 1 f, it is said:
“Subcontractor is one who has entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance; a person whose relation to the principal contractor is substantially the same as to a part of the work as the latter’s relation is to the proprietor-, literally, one who agrees with another to perform a part or all of the obligation which the second party oiues by contract.” (Emphasis added.)
In Vandenberg v. P. T. Walton Lumber Co., 19 Okla., 169, 92 P., 149, the second paragraph of the syllabus by the court reads:
“A subcontractor of a subcontractor is not entitled to a lien on a building under the provisions of the statutes of Oklahoma of 1893 regarding ‘liens of mechanic’s and others.’ The right to a lien under such statutes is confined to artisans, laborers, contractors and subcontractors. ’ ’
However, under our mechanics’ lien statutes, a subcontractor of a subcontractor is included within the statutory definition in those statutes of a “subcontractor.” See Section 8323-9, General Code,* and Section 8312, General Code. See also Baker & Conrad, Inc., v. Chicago Heights Construction Co., 364 Ill., 386, 4 N. E. (2d), 953, 958.
Under our mechanics’ lien statutes, the owner and the general contractor are given adequate means to protect themselves from the claims of labor and material creditors of a subcontractor of a subcontractor who comes within the definition of “subcontractor” in those statutes. See Section 8312, General Code. Under Sections 2365-1 to 2365-4, inclusive, General Code, the general contractor and his surety are given no *445 means whatever of securing such protection. The absence of any such statutory means of protection certainly affords good reason for hesitation in determining that the General Assembly intended the word “subcontractor” in Sections 2365-1 to 2365-4, inclusive, General Code, to be construed to include subcontractors of subcontractors merely because the definition provisions of the mechanics ’ lien statutes provide for such a construction.
Our conclusion is that it would be reasonable to infer that the General Assembly intended the word ‘ ‘ subcontractor” as used in Sections 2365-1 to 2365-4, inclusive, General Code, to have its ordinary meaning so as to include a materialman who knows that he is and does furnish materials under a contract with the general contractor providing therefor, but so as jiot to include any subcontractor of a subcontractor. Such a conclusion makes the syllabus and the judgment rendered in the American Guaranty Co. case entirely consistent with the provisions of Sections 2365-1 to 2365-4, inclusive, General Code, and does not expose the general contractor and his surety to the unreasonable risks referred to in the opinion in Royal Indemnity Co. v. Day & Maddock Co., supra, at page 71, and in the opinion in the American Guaranty Co. case at page 632.
Furthermore, it is entirely consistent with what appears to have been the reasoning of Judge Allen in her opinion in the American Guaranty Co. case, which in its conclusion, notwithstanding certain other broader statements which were unnecessary to support the decision or the pronouncements of the syllabus (page 634), recognizes only a right on the performance bond in favor of a “party furnishing * * * material” who “was one degree removed from the original contractor” and had “furnished * * * materials not under a contract with the principal contractor, but under a *446 contract with the materialman or subcontractor. ’ ’ This language of Judge Allen seems to recognize that a materialman may be included within the word “subcontractor ’ ’ as that word is used in Sections 2365-1 to 2365-4, inclusive, General Code. That .Judge Allen was of this view becomes more apparent on consideration of the foregoing statement of her conclusion in the light of her description of the seven cases which she cited and described immediately before stating that conclusion. In each instance, her description indicates that the party to whom the material or labor was furnished was a subcontractor, — not a material-man. Thus it is apparent that Judge Allen must have regarded the word “subcontractor” as used in Sections 2365-1 to 2365-4, inclusive, General Code, as including one who only furnishes material to the principal contractor under a contract with such principal contractor and who might also be called, as the syllabus in the case indicates, a “materialman.” That was also apparently the view of the writer of the opinion in the subsequent case of Royal Indemnity Co. v. State, ex rel. Standard Sanitary Mfg. Co., supra, when he said in the opinion at page 383:
“In American Guaranty Co. v. Cincinnati Iron & Steel Co., 115 Ohio St., 626, 155 N. E., 389, an additional question was argued and decided, viz., the right of a materialman furnishing materials to a subcontractor and who therefore had no direct contractual relation with the principal contractor.”
The ‘ ‘ subcontractor ’ ’ in the foregoing quotation had been referred to in the syllabus in the American Guaranty Co. case as a “materialman.”
Under Section 2365-1, General Code, the performance bond would then include the statutory “obligation for the payment by the contractor, and by all subcontractors” (including as subcontractors material-men of the general contractor who knew that they were *447 furnishing and did furnish materials for use in performance of the principal contract, but not including any subcontractors of subcontractors of the general contractor); and under Section 2365-2, General Code, it would be “conditioned for the payment by the contractor and by all [such] subcontractors, of all indebtedness [of such contractor and such subcontractors] which may accrue * * * on account of any labor performed or materials furnished in the construction, [or] erection * * * of such building.”
Our conclusion is that the word “subcontractor” as used in Sections 2365-1 to 2365-4, inclusive, General Code, should be given its ordinary meaning, so that it may include one who contracts with the general contractor for performance of part of the work to be performed under the general contract, even though the part contracted for involves only the furnishing of material.
In the instant case, the Carver-Behan Company did so contract and knew it was furnishing material for use in performance of the general contract. It was therefore a subcontractor within the meaning of Sections 2365-1 to 2365-4, inclusive, General Code. Since plaintiff seeks to enforce an “indebtedness” of such subcontractor ‘ ‘ on account of * * * materials furnished in the construction * * * of such building,” it comes within the obligations of the surety contemplated by Section 2365-2, General Code.
It follows that the judgment of the Court of Appeals must be . affirmed.

Judgment affirmed.

Weygandt, C. J., Hart, Stewart and Lamneck, JJ., concur.
Zimmerman, J., concurs in the judgment.

That section reads in part:
“* * * The words, ‘material man,’ as used herein, shall be construed to include all persons by whom any machinery, materials or fuel are furnished in, or for any construction, erection, alteration, repair, or removal hereinbefore mentioned. * * * The word ‘subcontractor’ shall be construed to include any person, firm, or corporation who undertakes to construct, alter, erect, improve, repair, remove, dig, or drill any part of the structures or impovements mentioned herein under a contract with any person other than the owner. * * *”

See footnote, supra.