MOUNTAINEER EUCLID, INC., APPELLEE. *v.* THE WESTERN CASUALTY & SURETY CO.. APPELLANT.
RAY C. CALL, INC.. APPELLEE, v. THE WESTERN CASUALTY & SURETY CO., APPELLANT.

(Nos. 1104 and 1105—Decided June 23, 1969.)

*Messrs. Edwards. Klein & Compton.* for appellees.
*Messrs. Graham & Graham,* for appellant.

STEPHENSON, J. These appeals are before this court on questions of law. They present identical questions and have been considered together, and the opinion rendered herein is dispositive of both appeals.

Mountaineer Euclid, Inc., and Ray C. Call, Inc., appellees herein and hereinafter referred to as companies, were **the sellers of a wide variety of parts for heavy construc-**

tion equipment. The Western Casualty & Surety Company, appellant herein and hereinafter referred to as Western, executed a surety bond, with Bruns Coal Company, Inc., as principal, to the state of Ohio in connection with a highway construction contract held by the Bruns Coal Company, Inc., for state highway construction. The companies instituted separate suits in the Court of Common Pleas against Western, alleging the furnishing of parts to the Bruns Company for which they were not paid. It was stipulated in the trial court that Bruns Coal Company, Inc., in performance of the construction contract, purchased various and sundry parts for heavy equipment used in the construction work under the contract from the appellee companies, and, further, that the companies remain unpaid.

The answer of Western alleges that "under the terms of its bond the defendant is not liable for parts furnished on a road construction job." The cause was submitted to the trial court on agreed facts and a stipulated issue, the issue being:

"Is plaintiff entitled to collect from defendant for the various and sundry parts plaintiff sold and delivered to Bruns Coal Company, Inc?"

The trial court rendered judgment in favor of the companies and Western has appealed. The error assigned is: "The Common Pleas Court erred in entering judgment and overruling the motion for new trial." The dispositive question on this appeal is whether the companies are within the coverage of the bond.

The contract between the Bruns Company and the state of Ohio was not presented in the stipulations and is not before us. The bond, made a part of the stipulation, is in the sum of $1,940,250, and provides, under "The condition of this obligation is such, that," followed by a requirement as to the performance of work, and then provides:

" * * * and shall pay all lawful claims of sub-contractors, materialmen and laborers for labor performed and materials furnished in carrying forward, performing or completing said contract, said principal and sureties agreeing and assenting that this undertaking shall be for the

benefit of any man or laborer having a just claim, as well as the obligee herein * * *."

The furnishing of such bonds is required by Ohio statutes. Section 153.54, Revised Code, provides:

"When public buildings or other public works or improvements are about to be constructed, erected, altered, or repaired under contract, at the expense of the state, or any municipal corporation, township, or school district thereof, the board, officer, or agent, contracting on behalf of the state, municipal corporation, township, or school district shall require the usual bond as provided for by law with good and sufficient sureties, with an additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials and tools furnished and for the use of and repairs to equipment used in connection with the construction, erection, alteration, or repair of such buildings, works, or improvements."

Section 153.55, Revised Code, provides that the bond required by Section 153.54, Revised Code, shall be "conditioned for the payment by the contractor and by all subcontractors of all indebtedness which may accrue to any person, firm * * *."

Section 153.57, Revised Code, provides for the form of the bond, which is in part, "* * * and shall pay all lawful claims of subcontractors, materialmen, and laborers, for labor performed and materials furnished in the carrying forward, performing, or completing of said contract * * *."

The last cited section appears to use broader terms as to the required coverage than Sections 153.54 and 153.55, Revised Code. However, the Supreme Court has held that the terms of Sections 153.54 and 153.55, Revised Code, are the controlling sections. *Royal Indemnity Co.* v. *Day & Maddock Co.,* 114 Ohio St. 58. The court has further held that, although Section 153.54 is located in "Title I, Chapter 153, Buildings," it is applicable to all "other public works." *Southern Surety Co.* v. *Standard Slag Co.,* 117 Ohio St. 512.

**188**

It is to be noted that while Section 153.54 requires an obligation in the bond to pay, in addition to labor and materials, for "tools furnished and for the use of and repairs of equipment," the statutory bond form in Section 153.57 does not have this requirment. It is immaterial, however, for the reason that Section 153.57, Revised Code, provides that the bond shall be subject to Sections 153.01 to 153.60, to the same extent as if the provisions of such sections were fully incorporated in the bond. Additionally, the third paragraph of the syllabus in *Royal Indemnity Co.* v. *Day & Maddock Co., supra,* provides:

"A bond, executed substantially in the form provided by the Legislature, will be construed to comprehend as its beneficial obligees those designated in the statute requiring and defining the terms and conditions of the bond, and, in interpreting such bond and determining who the beneficial obligees thereof are, reference will be had to such statute."

Section 5525.16, Revised Code, which is in the chapter dealing with highways, provides a requirement substantially similar to Section 153.54, the statute providing in part:

"* * * Before entering into a contract the director shall require a bond with sufficient sureties, conditioned, among other things, for the payment by the contractor and all subcontractors for labor performed or materials furnished in connection with the project involved * * *."

Bearing also upon the problem before us is Section 1311.27, Revised Code, which provides:

"Gasoline, lubricating oils, and other petroleum products, powder, dynamite, blasting supplies and other explosives, tools, use of machinery and equipment, and repairs thereto furnished to contractors, subcontractors, and others and used in delivering or hauling materials to, or otherwise used for, in, in connection with, or in preparation for, the construction, erection, alteration, or repair of any highway, road, sewer, street, or other public improvement, public building, or public works, or in preparing ground therefor, whether or not said products enter into

and become component parts of or are substantially consumed, in connection with or in preparation for the construction, erection, alteration, or repair of said highway, road, sewer, street, or other public improvement, public building, or public works, or in preparing ground therefor, are material, machinery, or fuel within the meaning of Sections 153.54, 1311.26, and 5525.16 of the Revised Code, and any person, firm, or corporation furnishing such products or services is a materialman under such sections and entitled to the benefits thereof.''

Prior to the adoption of Section 1311.27, Revised Code, *supra,* and prior to the amendment of Section 153.54, Revised Code, to include tools furnished, use of equipment and repairs of equipment, the Supreme Court uniformly determined the coverage of the bond based upon a test of whether the labor and materials were furnished for incorporation, or were incorporated, in the construction itself. Thus, in *Royal Indemnity Co. v. Day & Maddock Co., supra,* the rental of equipment, repairs to the equipment and transportation costs for the equipment were excluded; in *American Guaranty Co. v. Cincinnati Iron & Steel Co.* 115 Ohio St. 626, the furnishing of steel by the plaintiff to a materialman was covered by the bond because of its subsequent incorporation in the building; in *Indemnity Ins. Co. of North America v. Portsmouth Ice, Coal & Bldg. Material Co.,* 122 Ohio St. 439, the furnishing of lumber for concrete forms was excluded from the coverage of the bond because the lumber was not incorporated in the structure.

The lower courts adopted this reasoning also. In *Standard Oil Co. v. Detroit Fidelity & Surety Co.,* 24 Ohio App. 237, bond coverage was denied to one furnishing gas and oil for trucks used in the construction; in *Royal Indemnity Co. v. Flutmes,* 8 Ohio Law Abs. 544, coverage was excluded for labor in the repair of the contractor's equipment; in *Appleman v. Southern Surety Co.,* 27 N. P. (N. S.) 158, the furnishing of dynamite and related blasting material was excluded.

In 1929, the Legislature enacted Section 8324-1, Gener-

al Code (113 Ohio Laws 474), now 1311.27, Revised Code, and provided that gasoline, lubricating oils and other petroleum products furnished to contractors and others and used in delivering or hauling materials or otherwise used on the job were to be deemed materials under both the public works bond sections and the mechanic lien sections. In 1935 (116 Ohio Laws 76), the statute was amended to include explosives, powder, dynamite and blasting supplies and equipment furnished to contractors and provided further:

"* * * whether or not said products enter into and become component parts of or are substantially consumed in, in connection with or in preparation for the construction, erection, alteration, or repair of said highway, road, sewer, street or other public improvement, public building or public works, or in preparing ground therefor, shall be deemed to be material, machinery or fuel within the meaning of Sections 1208, 2365-1 and 8324 of the General Code, and any person, firm, partnership or corporation so furnishing such products shall be deemed to be a materialman within the provisions of said Sections 1208, 2365-1 and 8324 of the General Code and entitled to the benefits thereof."

In 1947 (122 Ohio Laws 147), the statute was again amended by adding, after "blasting supplies," the words "tools, use of machinery and equipment and repairs thereto furnished to contractors." After the term "corporation so furnishing such products" was added "or services shall be deemed to be a materialman * * *." In the same amending act Section 2365-1, General Code, now 153.54 Revised Code, was amended also by adding "and tools furnished and for the use of and repairs to equipment used in connection with."

From the above examination of the legislative history of those statutes, and the court decisions thereunder, it is evident to us that the Legislature intended to comprehend within those statutes the claims of certain persons who would otherwise be excluded under the "incorporation" test.

Rather obviously, the Legislature intended some change in the law by insertion of the term "repairs." Appellant asserts that it was only intended to include coverage for labor used in repairs to equipment. It is reasoned that every repair includes labor but not necessarily parts, and that if parts are used they will not necessarily be consumed on the job and will, in effect, add to the capital assets of the contractor at the risk of the surety on the job being done at time of purchase. Authority can be found for this latter contention, among other views, in 67 A. L. R. 1232, in which cases on this subject are annotated.

The term "repair" has been defined in various ways. One definition is "to restore by replacing a part or putting together what is torn and broken." Webster's Third New International Dictionary (3 Ed.). We are persuaded that parts are as much a necessary ingredient of repairs as the labor necessary to effect the repairs. The approximately 400 parts furnished by the companies to keep the contractor's equipment in operating condition attest to this conclusion. Interpreting Section 1311.27, Revised Code, and 153.54, Revised Code, together, which must be done because of the reference in the former to the latter, we conclude that it was intended to give to one furnishing repairs, whether parts or labor, the status of a materialman and to condition the bond specifically to such coverage. The inclusion of parts as an incident to repairs under Section 1311.27, Revised Code, is in harmony with the thrust of the section, which is to provide protection to the supplier of products and services.

The labor necessary to accomplish the repairs by installation of the parts in the contractor's equipment was furnished by the contractor. If a third party had made the repairs, supplying both necessary parts and labor, a claim for coverage within the bond for "repairs" would be clearer than in the case at bar. Should the claim of one supplying the parts be defeated because the contractor provides the labor for it's installation in effecting the repair? Our conclusion must be in the negative when one bears in mind the underlying rea-

son for statutes requiring such conditions in public contract bonds. In *Royal Indemnity Co.* v. *State, ex rel. Standard Sanitary Mfg. Co.*, 120 Ohio St. 378, 387, in discussing the labor and material requirements generally, it was stated:

"Such conditions in the bond are for the public benefit, because they insure confidence in the contractor, and therefore encourage responsible and capable persons to furnish labor and materials, and to contract for certain portions of the work, and at the same time insure a better quality of performance. * * *"

To the argument that the parts may not be entirely consumed on the job, we note that the Legislature placed "repairs," without limitation, in Section 1311.27, Revised Code, which already provided:

". . . whether or not said products enter into and become component parts of or are substantially consumed, in connection with or in preparation for the construction * * *."

We are strengthened in our conclusion by the following statement of the Ohio Supreme Court in the construction of a public contract surety bond:

"* * *Unlike an ordinary private surety, a surety of the character herein involved, which accepts money consideration, has the power to and does fix the amount of the premium so as to cover its financial responsibility. This class of suretyships, therefore, is not regarded as 'a favorite of the law.' (*Bryant* v. *American Bonding Co.*, 71 Ohio St. 90, 91.) And if the terms of the surety contract are susceptible of two constructions, that one should be adopted, if consistent with the purpose to be accomplished, which is most favorable to the beneficiary." *Royal Indemnity Co.* v. *Northern Ohio Granite & Stone Co.*, 100 Ohio St. 373, 377.

*Judgment affirmed.*

Gray, P. J. and Abele, J., concur.